Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

FILED/REC'D

# UNITED STATES DISTRICT COURT
for the
Western District of Wisconsin
Dane County, Wisconsin

2025 AUG 12 A 11: 18

CLERK OF COURT
U.S. DISTRICT COURT
WD OF WI

|  |  |
|---|---|
| James H. Fetzer, Ph.D. <br> *Plaintiff(s)* <br> *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. **25 CV 674 WMC** <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: *(check one)*   x Yes  ☐ No |
| Rumble, Inc. <br> *Defendant(s)* <br> *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* |  |

## COMPLAINT FOR A CIVIL CASE

I.  **The Parties to This Complaint**
    A.  **The Plaintiff(s)**

    Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.
    
    | | |
    |---|---|
    | Name | James H. Fetzer, Ph.D. |
    | Street Address | 800 Violet Lane |
    | City and County | Oregon, Dane County |
    | State and Zip Cod | Wisconsin 53575 |
    | Telephone Number | 608 354-4280 |
    | E-mail Address | jfetzer@d.umn.edu |

    B.  **The Defendant(s)**

    Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.
    Defendant No. 1
    
    | | |
    |---|---|
    | Name | Rumble, Inc. |
    | Job or Title *(if known)* | Legal |
    | Street Address | 444 Gulf of Mexico Drive |
    | City and County | Longboat Key, Manatee County and Sarasota County |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

|  |  |
|---|---|
| State and Zip Code | Florida 34228 |
| Telephone Number | (941) 210-0196 |
| E-mail Address *(if known)* | Legal@rumble.com |

Defendant No. 2
    Name
    Job or Title *(if known)*
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address *(if known)*

Defendant No. 3
    Name
    Job or Title *(if known)*
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address *(if known)*

Defendant No. 4
    Name
    Job or Title *(if known)*
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address *(if known)*

## II.  Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*
    x   Federal question                      x   Diversity of citizenship

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

This Court possesses subject matter jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. § 1332.
Free speech rights are protected under the First Amendment of the U.S. Constitution.
Section 230 of the Communications Decency Act ("CDA") codified, 47 U.S.C. § 230, provides broad immunity to providers and users of "interactive computer services" from liability for content created by third parties, with the following exceptions:
a.) breach of federal criminal law;
b.) instances in which the platform materially contributed to the creation or development of the illegal content;
c.) breach of contract or promissory estoppel – that is, instances in which the platform allegedly violated its own terms of service or made specific promises to users which were broken.
Rumble broadcasts worldwide, including all 50 states of the Union, specifically, in Wisconsin where Plaintiff resides and has become the target of its illegal practices

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

    a. If the plaintiff is an individual
    The plaintiff, __James H. Fetzer, Ph.D.__, is a citizen of the State of __Wisconsin__.

    b. If the plaintiff is a corporation
    The plaintiff, _____, is incorporated under the laws of the State of *(name)* _____,
    and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual
    The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

    b. If the defendant is a corporation
    The defendant, *(name)* __Rumble Inc.__, is incorporated under the laws of the State of *(name)* __Florida__, and has its principal place of business in the State of *(name)* __Florida__.
    Or is incorporated under the laws of *(foreign nation)* _____,

Page of 6

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

The amount in controversy is $10 million for violating Section 230 of Communications Decency Act (CDA); aiding and abetting elder abuse; aiding and abetting International Infliction of Emotional Distress (IIED); aiding and abetting defamation, aiding and abetting defamation per se; aiding and abetting false light publicity; aiding and abetting defamation by implication; aiding and abetting privacy violations; and breach of contract.
Plaintiff is also seeking treble penalty damages, putting that amount at $30 million for neglecting to enforce its own user agreement, neglecting to moderate unlawful speech as required by law, and failing to provide a duty of care owed to Plaintiff, thereby materially contributing to the harm.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attached Statement of Claim.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Prayer for relief.

WHEREFORE. Plaintiff respectfully requests that the Court enter a judgment in his favor and grant the following relief:
1. Compensatory damages of $10 million for defamation and other abuses that afflicted profound personal, professional, and reputational damage and emotional distress upon Plaintiff.

2. Treble penalty damages for Defendant's willful negligence and material support that enabled and furthered the damage and injury.

3. Penalty fine of $1,000 per violation per day payable within 30 days of receipt of notification of any unlawful content against Plaintiff or Plaintiff's associates on Rumble that either defames, violates the dignity, impugns the integrity, or otherwise infringes upon their privacy for as long as that content remains on the platform.

4 Declaratory judgment establishing Plaintiff's legal rights as set forth herein.

5. Injunctive relief requiring the removal of the offending videos and termination of Vaca's account.

6. Pre and post-judgment interest as permitted by law.

7. Monetary damages are secondary and intended as punishment for inflicting other-than-financial damages upon Plaintiff. Removal of videos and cessation of ongoing offenses is primary. Primary damages has been reputation rather than fiscal.

8. Such other and further relief as the Court may deem just and proper.

9. If responded fails to answer or rebut the claims set forth herein within 21 days, as prescribed by law, Plaintiff respectfully requests that this Court: a.) Enter a default judgment under Rule 55(a) to compel the platform to enforce its terms of service and suspend or terminate the accounts in question, remove the defamatory material against Plaintiff and his colleagues immediately, and cease and desist all harassment and defamation; b.) Award monetary damages as requested.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        12 Aug 2025

Signature of Plaintiff    _James H. Fetzer, Ph.D._

Printed Name of Plaintiff    James H. Fetzer, Ph.D.

The above signed came before me
This 12 day of Aug, 2025
Notary Public, Dane Co WI
Comm Exp 11/03/2026

_W H Tushaus_

Notary Public
State of Wisconsin
W H Tushaus

## Statement of Claim

*Summary*

The main channels in question are "VictorHugoArt"
https://rumble.com/c/c-5462997?e9s=src_v1_cmd
and "VictorHugoArtNews:
https://rumble.com/user/VICTORHUGOARTNEWS?e9s=src_v1_cmd
Rumble is a social media platform.
Beginning February of 2025, Plaintiff terminated a Rumble content creator, Victor Hugo Vaca, Jr., from his show on Revolution Radio, prompting Vaca to retaliate by posting derogatory comments about Plaintiff had his former co-hosts on Rumble.
Not long after, Vaca launched a defamation campaign against Plaintiff in which he attempted to discredit, disparage, and demoralize Plaintiff over his research on the Sandy Hook shooting.

*Vaca misconduct*

Vaca has posted the defamatory content in subject headings, thumb nails, comments and in video content while rigging algorithms to maximum effect for the purpose of spreading and amplifying the defamation and the harm inflicted upon Plaintiff and supportive colleagues.
The cover art and captions of Vaca's posts are his primary means of attack as opposed to the content of the programs themselves, which often bear no relationship to the cover art, which could be characterized as "political pornography."
Plaintiff and his colleagues have flagged the content repeatedly.
With few exceptions, Rumble has failed to moderate the unlawful content and that which violates its terms of service.
As part of this politically-motivated defamation campaign, Vaca attempted to enlist Plaintiff's friends and colleagues – and prominent online hosts on the Rumble platform – to support his efforts.
Anyone who supported or refused to disavow Plaintiff, particularly within the context of his research of Sandy Hook, has been similarly targeted in Vaca's defamation campaign.

*Vaca entanglements*

Plaintiff was principally targeted for defamation on the Rumble platform over his research on Sandy Hook.
Plaintiff is a nationally recognized authority on the Sandy Hook shooting whose research challenged official narratives.
Rumble's political interests are aligned with Sandy Hook Promise, an organization with a vested interest in suppressing Plaintiff's Sandy Hook research and discrediting him as a researcher.
Of note, Dan Bongino, Rumble's second largest individual shareholder, has a vested interest in the Sandy Hook narrative, given his connections to *InfoWars* host Alex Jones and Sandy Hook Promise.
Immediately after the Sandy Hook shooting in 2012, Bongino, who had worked for the Obama Administration as a Secret Service agent, offered his expertise on how to "recognized the signs" of a potential shooter to prevent another Sandy Hook.
Bongino's "recognize the signs" became the basis upon which Sandy Hook Promise was established.
*InfoWars* host Alex Jones reported the shooting to be a hoax, generating for him a massive following such that by, between 2016 and 2018, his platform was reportedly generating $165 million revenue, reflecting that his influence and audience were substantial.
Jones has affirmed that his platform had become one of the most followed and influential independent sources of news on the Internet.

1

Bongino gained his national following as a media personality while appearing on *InfoWars* as a regular guest. In a number of those appearances, he had affirmed that Democrats had exploited falsehoods surrounding the Sandy Hook shooting for political gain.

Based upon the following he generated on *InfoWars*, Bongino launched *The Dan Bongino Show*, the most followed show on Rumble.

Bongino has been actively working across social media platforms, as an investor and facilitator, to amplify messaging on behalf on the Trump Administration and in concert with Jones.

Plaintiff's Sandy Hook research was reported by Jones who subsequently was sued for defamation by the Sandy Hook families in which judgments were awarded against him, totaling around $1.5 billion.

Jones retracted his statements on Sandy Hook and is appealing the judgments, which have imperiled the viability and profitability of *InfoWars*.

Jones is struggling to survive the defamation judgments with his reputation, credibility, and the viability of his *InfoWars* platform intact.

Jones acknowledged that his trials were "coordinated" by HBO, whose parent company is Discovery-Times Warmer, a corporate partner of Sandy Hook Promise.

Jones frequently cites Boningo as a source for his information.

Bongino is now FBI Deputy Director, working for the Department of Justice which oversees the $1 billion STOP School Violence, an initiative conceived by Sandy Hook Promise to "Know the Signs" to "prevent another Sandy Hook."

President Donald Trump signed the initiative into law.

Vaca has admitted to targeting Plaintiff for political reasons, stating his belief that Plaintiff "committed treason" by colluding with President Barack Obama to "throw (his) Sandy Hook" defamation law suit to suppress "free speech."

Reflecting alignment in messaging, Jones claimed that Obama is behind a "treasonous" agenda to suppress free speech.

Within the context of targeting Plaintiff, Vaca has stated that Jones "knows about me" and that Plaintiff is a "gnat who is in the way of what we are trying to do" for Jones.

Among the guests Vaca has featured on his show to support his targeting of Plaintiff is attorney Todd Callender, a contributor to *InfoWars*.

### *Rumble complicity*

Regardless of the political motivation, Rumble materially contributed to the defamation and abuse by failing to enforce its own user agreement or moderate its content. Had Rumble acted responsibly, in good faith, and in accordance with the law, Plaintiff would not have been harmed.

On April 25, 2025, Plaintiff mailed a cease-and-desist order to Rumble legal department. Rumble did not respond to the notice nor moderate or remove the defamatory content after receiving the notice on April 30, 2025.

On July 1, 2025, Plaintiff filed an Affidavit against Rumble with the Western District Court of Wisconsin to which a response was requested within 30 days. (See Case No: 3:25-mc-00005.) An uncontested affidavit, properly served, fact-based, and relevant to the relief request, with no response or denial, establishes truth in commerce. No response or denial was given.

Reference: https://www.pacermonitor.com/public/case/58808601/No_Case_Title

Rumble received the Affidavit on July 5. (USPS reference: 9410811899560071110663)

As of August 12, 2025, Rumble had neither responded to the Affidavit nor moved to moderate its content. Therefore, Rumble has accepted the claims and damages therein as stated.

Vaca's defamation continues to this day and has become more egregious. This month Vaca posted the head of one of Plaintiff's colleagues on a naked body – and falsely accused Plaintiff of murdering his own mother, who had committed suicide.

Upon being notified, Rumble could have suppressed Vaca's content, pushed it down in search results, and/or given Plaintiff's original content priority. The content could have been moderated, deleted,

2

shadow banned, etc. to have prevented harm.

Vaca's channels could have been suspended or terminated, upon repeated violations, to have prevented harm.

Vaca's content served no public interest or constructive purpose.

Vaca's defamatory content has remained, spread, and metastasized on Rumble among audiences who are consumers and followers of Plaintiff's work.

The content appears in search engines, inflicting tremendous long-term professional and reputational harm upon Plaintiff who relies upon the public's trust and good will to support his work, purchase his books, and attend his classes.

Plaintiff posts his own content on Rumble, including interviews, guest appearances, group discussions, research, commentary, and promotions for his conferences and courses.

In fact, Rumble is a platform from which Plaintiff derives publicity to support his livelihood.

Due to the defamation, search engines overwhelming produce hundreds of videos defaming Plaintiff and casting him in a false light.

### *Specific claims*

1. **Rumble violated Section 230 of the Communications Decency Act (CDA).**

Section 230 of the Communications Decency Act ("CDA") codified, 47 U.S.C. § 230, provides broad immunity to providers and users of "interactive computer services" from liability for content created by third parties, with the following exceptions:

a.) breach of federal criminal law;

b.) instances in which the platform materially contributed to the creation or development of the illegal content; and

c.) breach of contract or promissory estoppel – that is, instances in which the platform allegedly violated its own terms of service or made specific promises to users which were broken.

As outlined herein within this complaint, Rumble has violated these provisions.

2. **a. Rumble aided and abetted Elder Abuse.**
**b. Rumble aided and abetted Intentional Infliction of Emotional Distress (IIED).**

As of August 8, 2025, Vaca has posted hundreds of videos on Rumble, a platform whose subscribers follow Plaintiff's work.

Vaca was aware of that fact that Plaintiff, an 84-year-old at-risk individual, would see the see his content and be distressed by it.

He was also aware that Plaintiff's colleagues and those who followed or otherwise searched for his content would see it.

Plaintiff suffered a heart attack and underwent heart surgery. Vaca was aware of Plaintiff's status as a vulnerable at-risk individual.

Vaca exploited this knowledge, with malicious intent, to inflict distress upon Plaintiff with the apparent purpose of inducing a heart attack, reflecting in gleeful comments in comment sections and in video content characterizing Plaintiff as a "dying dog" who was on "borrowed time" and "about to die any day now."

Comments supporting Vaca's content expressed hope that Plaintiff would succumb to a heart attack.

In one video referencing Plaintiff, Vaca's thumbnail was that of a tombstone.

In another, he posted a video of a man dying of a heart attack while referencing Plaintiff. "I paid this person to die," he said. "You've now witnessed the death of someone.... One minute you could be laughing and enjoying yourself; the next minute, you're dead."

In a separate incident, Vaca taunted Plaintiff by juxtaposing his face with an image of a penis.

Upon discovering Plaintiff's mother had committed suicide, Vaca accused Plaintiff of having

3

murdered her to distress his target.

Vaca posted hundreds of abusive, defamatory, sadistic videos against Plaintiff.

He further attempted to isolate Plaintiff by defaming any host or colleague who supported, defended, or offered a platform to him, stating that Plaintiff was "discredited" and that anyone who hosted or defended Plaintiff was "discredited" by association.

Supportive individuals, including those who refused to disavow Plaintiff or join Vaca's campaign, became targets of Vaca's defamation and were ridiculed, humiliated, and defamed in thumbnails, video content, and commentary over and over and over again, as Vaca marketed the smears against them to ensure that his false light characterizations were associated with Plaintiff and everyone who supported him.

The content was flagged but Rumble determined that these abuses did not violate its community guidelines.

**3. a. Rumble aided and abetted defamation.**
**b. Rumble aided and abetted defamation per se.**
**c. Rumble aided and abetted false light publicity.**

From February 2025 to the present, Vaca has lodged false accusations against Plaintiff to impugn Plaintiff's character with particular focus on Plaintiff's research on Sandy Hook in which he falsely accused his target of being a "liar," "treasonous," and having purposely "thrown" his Sandy Hook defamation case as part of a secret, treasonous plot with President Barack Obama to silence free speech.

The claim was absurd on its face, Plaintiff having carried his case to the U.S. Supreme Court and currently having four appeals before the Wisconsin Court of Appeals (IV).

Vaca's attacks are, as in this case, by-and-large "fact free." Vaca didn't merely offer an opinion – he marketed falsehoods, repeating and marketing them in thumbnails, videos, and comments while attempting to enlist other content creators to join him in his campaign against Plaintiff.

Within this context, he falsely accused Plaintiff of being a homosexual, having committed incest with a cousin, and of being a pathological liar and "a co-intel pro disinfo agent."

He further falsely accused Plaintiff, who had received four traffic tickets, on that basis of having been arrested four times to "discredit" and convince others to disavow his target.

Plaintiff flagged the content, but the platform (again) neglected to moderate the content.

A Cease-and-Desist Demand was similarly ignored.

Vaca's statements were not merely made in passing. but relentlessly marketed, posted in thumbnails, comment sections, repeated in commentary across BitChute and Rumble platforms in which he enlisted or attempted to enlist others, particularly high-profile hosts, to join him in his campaign to "discredit" and "disavow" Plaintiff.

Vaca marketed anyone who provided Plaintiff a platform, supported him, or still deemed him credible after Vaca's smears as discredited by association. Vaca encouraged other hosts and viewers to lobby platforms executives to defend his "right to free speech," stating that if he were censored, everyone else could be censored too, for merely voicing an opinion.

**4. Rumble aided and abetted defamation by implication.**

By defaming Plaintiff's colleagues and supporters, Vaca ensured that the reputation and public perception of them were cast in a false light, thereby defaming Plaintiff as being associated with individuals Vaca had branded disreputable.

Vaca characterized Plaintiff, his colleagues, and anyone who defended or hosted Plaintiff on their shows with such terms as "discredited," "coo coo," "a liar," "disinfo," "treasonous," "sad basket case," "bitch," "goat fucker," "pedophile," "herpes," "bipolar," "liar," "backstabber," "shill," "disinformation agent," "cointelpro," "psychotic," "misogynist," etc. to inspire the public's disgust, distrust, and rejection of Plaintiff, his colleagues, and their work.

Upon learning that one of Plaintiff's colleagues, Russ Winter, had herpes, Vaca marketed the

4

colleague as a venereal disease and depicted him as having "herpes flareups" and having transmitted herpes to his granddaughter, implying that he had committed incest and was a pedophile.

Vaca falsely accused another colleague, Joachim Hagopian, perhaps the world's leading expert on politics and pedophilia (having published a 5-volume book about it, *Pedophilia & Empire: Satan, Sodomy, and the Deep State*), a leading expert on the Jeffrey Epstein pedophile scandal, of being, alternatively, a "pedophile" and "alleged pedophile" while depicting him as a pedophile in thumbnails, comments, and commentary.

Vaca infringed upon the copyright and privacy of another colleague, Susan Bradford, a leading investigative journalist in the Abramoff investigation (having published the definitive investigative book, *Lynched*, on federal investigation with the cooperation of Republican superlobbyist Jack Abramoff who had granted her the exclusive), who had intervened on Plaintiff's behalf to stop the abuse and restore peace.

Link to Lynched: https://www.amazon.com/Lynched-Establishment-Manufactured-Republican-Super-lobbyist/dp/145631016X/ref=sr_1_1?crid=1OEP0W1NLVBRM&dib=eyJ2IjoiMSJ9.jxWoPadBqtqmjQepuMBAXZrJMNpWn_xUZ1-c9uQQmJFKcIG_921QiePG0Jpw-HYl1wqX5LLXH7DnnFSMeQ_NO6m3Y9jUHg1hiO_nVP-F8uFe-54kkjZ1KcrT3QgnTZk3.5GEPgScw3wup53rKQzBeN-I6przcYusL5yhVPcRXvCg&dib_tag=se&keywords=lynched+susan+bradford&qid=1754861720&sprefix=lynched+susan+%2Caps%2C835&sr=8-1

Vaca responded by posting her face on an image of an elderly woman's naked woman's body in violation of her privacy and as part of a campaign to degrade and humiliate her as a woman and to inflict emotional harm and professional damage upon her.

Vaca took emails Bradford had written confidentially and posted them on the Rumble platform against her wishes and in violation of her privacy, in thumbnails, content, and commentary.

He took Bradford's statements out of context, at times rewriting or mischaracterizing them, and then weaponized them against her and Plaintiff to create the false impression that she had accused Plaintiff of "viciously attacking" people who disagreed with him over Sandy Hook.

He also falsely credited Bradford with characterizing Plaintiff as a disinfo agent, "as acknowledged by Susan Bradford."

In response to her appeals that he stop defaming her, Vaca responded that she had made herself "fair game" by defending Plaintiff and that he would do as he pleased and destroy her reputation.

The images Vaca used included professional pictures for which she held the copyright and which were associated with her online professional identity.

Even though Bradford disavowed the statements Vaca attributed to her, Vaca continued to use them.

While characterizing her in demeaning sexist terms and images in thumbnails, comments, and content, Vaca sexually harassed her, telling her she "needed a man to love."

He also contacted her through her website, appealing to her to meet him, presumably as part of an effort to enlist her in a campaign against Plaintiff – and then upon being rebuffed and told to cease and desist, increased the intensity and frequency of his attacks against her in which he defamed and degraded her in comments, commentary, and in thumbnails to cast her in a false light, thereby undermining her professional reputation.

From February 2025 to the present, Vaca produced hundreds of videos that portrayed Plaintiff and colleagues in a false light in which they were characterized as unsavory, depicted in pornographic images, associated with crimes and venereal diseases, and falsely accused of sexual deviancy.

For the latest count, see "Victor Hugo, Jim Fetzer", on Rumble.

Their emails and other private information were posted, in violation of their privacy rights, and at times, rewritten, and mischaracterized to harass them and undermine the public's support of Plaintiff's work.

The vicious characterizations were often followed by "drip drip drip" taunts in which Vaca and his co-conspirators rejoiced and delighted in destroying the reputations of his target(s) by 1,000 malicious, defamatory cuts.

The content was shared widely throughout the Rumble platform and then distributed through emails,

5

in comment sections reposted over and over, day after day, for months on end in which Vaca acted with reckless disregard for the privacy or impact on the reputation, career, and business of his targets and with indifference to the emotional distress inflicted upon them.

Any effort by Plaintiff or Plaintiff's colleagues to restore peace, hold Vaca accountable, or mitigate the abuse was met with by retaliation, malevolence, and further harassment, adding fuel to the flames of Vaca's defamation.

Vaca's abusive conduct and defamatory language were reported to Rumble through the platform's reporting system on numerous occasions.

Rumble has so far not removed or moderated the content.

### 5. Rumble aided and abetted privacy violations.

In violation of HIPPA privacy laws, Vaca improperly accessed Plaintiff's health records in which Plaintiff underwent a routine test for dementia and received a brain scan at the request of his wife, which Plaintiff believes to have been motivated by political disagreements about Donald J. Trump, which have become common between spouses in relation to the current White House incumbent.

The results of the tests reflected that Plaintiff was of sound mind and well above average in cognitive abilities (27/30 on first; 28/30 on second; confirmed by MRI scan). To the best of Plaintiff's recollection, nobody outside of the Plaintiff's immediate family was privy to this information.

Upon acquiring access to the records, Vaca not only made them public, but then falsely characterized them as reflecting that Plaintiff suffered from dementia and cognitive decline to discredit his work on Sandy Hook.

"Even (Plaintiff's) wife thinks he has dementia," Vaca told his audience.

Vaca then attempted to exploit his knowledge of the dementia test to discredit Plaintiff and his work while appealing to his audience to disavow Plaintiff on grounds that no one should take Plaintiff's work seriously since he was "discredited" by virtue of having dementia.

After the content was flagged, Rumble determined that it did not violate the platform's community standards or terms of service.

### 6. Rumble aided and abetted Unjust Enrichment

After posting Plaintiff's face juxtaposed with the image of a penis, Vaca rejoiced in the distress that he was inflicted upon Plaintiff. Since he was able to harass, torment, and defame Plaintiff with impunity, Vaca proceeded to launch his own men's underwear line, called "Fetzer Gay/Tranny Undies for men who love men and women who want to be men."

https://victorhugoart.gumroad.com/l/fetzer-gay-tranny-undies?layout=profile

The underwear, which sold at $55 per unit, featured the image of the penis Vaca had juxtaposed with Plaintiff's face in thumbnails.

Plaintiff did not provide permission for Vaca to use his name to sell this product which cast Plaintiff in a false light and invaded his privacy.

The marketing of penis underwear specifically to target, harass, and defame Plaintiff reflected the outrageousness of Vaca's conduct and that Vaca was able to defame, harass, and humiliate Plaintiff on Rumble's platform without impunity while profiting from the unlawful speech.

### 7. Rumble failed to perform on its user contract.

Rumble failed to exercise a duty of care owed to Plaintiff to shield him and his colleagues from a rogue operator on its platform. Had Rumble adequately and responsibly moderated the content, as contractually agreed, the platform would have prevented harm to Plaintiff.

Rumble neglected to perform on its contract by enforcing the terms of its user agreement, specifically those provisions that prohibit unlawful, abusive, or harmful speech.

With impunity, Vaca violated Rumble's guidelines for platform misuse for going on seven months. Among the terms of service Vaca violated include but are not limited to:

a. Posting "message(s) which (are) libelous, defamatory, (and) which discloses private or personal matters concerning any person or entity."

b. Posting or transmitting "message(s), file(s), image(s), which (are) indecent, obscene, or pornographic."

c. Interfering with "another user's use or the functionality of the Forum."

d. Posting or transmitting "message(s) which are) abusive...harassing, harmful, hateful."

e. Posting or transmitting "messages(s) pertaining to … petitions for signatures...or pertaining to the manipulation of the Rumble Service."

f. Using "the forum to conduct … .any illegal activity (or) other activity which infringes the rights of others."

g. Posting "content or material you did not create" and submitting "content or material that is grossly offensive to the online community, including, but not limited to, racism, anti-semitism, and hatred: or content or material that promotes, support, or incites violence or unlawful acts" "content or material ...promoting harm or injury to any ...individual."

h. "Disseminating personal information about another individual for malevolent purposes, including libel, slander, 'doxxing,' defamation or violation of an individual's right to privacy."

7